Elwood CLUCK, Appellant,

v.

Margaret CLUCK, Appellee.

No. 16926.

Court of Appeals of Texas,
San Antonio.

Dec. 8, 1982.

Appellant's Rehearing Denied
Jan. 12, 1983.

Appellee's Rehearing Granted in Part;
Denied in Part Jan. 12, 1983.

339

Elwood Cluck, pro se.

Jack Pasqual, Pat Maloney, Soloman Casseb, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and REEVES, JJ.

## OPINION

REEVES, Justice.

The appellee in this case, Margaret Cluck, petitioned the trial court for a divorce from the appellant, Elwood Cluck. Appellant stipulated to his fault as the cause of the divorce. The trial court, without aid of jury, awarded the divorce to appellee, divided the community property and awarded attorney's fees. This appeal concerns the property division and the attorney's fees.

Appellant's first two grounds of error attack the award of attorney's fees to appellee's attorneys. Appellee initially retained Mr. Solomon Casseb, Jr. as counsel. Mr. Casseb filed the original petition for divorce, which included the following:

Petitioner states that it was necessary to secure the services of the undersigned attorney to represent her herein, that such services were necessary and proper for the preservation and protection of petitioner's rights, and a reasonable attorney's fee should be awarded and judgment rendered in favor of said attorney and against respondent.

The petition closed with a prayer which requested, in part, that "Judgment be rendered in favor of her attorney for his attorney's fees." Casseb withdrew from the case by written motion granted by the court on January 19, 1981. Mrs. Cluck's new counsel, Pat Maloney, Sr. and Associates, including Mr. Jack Pasqual, entered the suit with a formal notice of appearance on February 2, 1981. In the divorce decree, the trial court awarded Mr. Casseb $5000.00 and Maloney and Pasqual $46,000.00 in attorney's fees. Appellant stipulated that the reasonable legal services rendered by Casseb amounted to $5,000.00. The appellant alleges that the pleadings do not support the award to Casseb or Maloney and Pasqual, and the evidence does not support the award to Maloney and Pasqual. Appellee responds that appellant did not specially except to her pleadings and did not object to the evidence offered to prove attorney fees.

■ The award of attorney's fees in a divorce action is treated as part of the fair and just division of the marital estate. It is incumbent upon the party seeking recovery of attorney fees to prove that it is necessary to employ the attorney and the reasonableness of the attorney fee. *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950). Fees are recoverable either in the wife's name or by the attorneys as parties. *Akin v. Akin,* 276 S.W.2d 323, 325–326 (Tex.Civ. App.—Austin 1955, writ dism'd); *Jeter v. Jeter,* 281 S.W. 598–600 (Tex.Civ.App.— Dallas 1926, no writ). If appellee has inadequately pleaded for recovery of attorney's fees, appellant waived the error by his failure to specially except to appellee's pleadings. *See Lampsman v. First National Bank in Dallas,* 463 S.W.2d 28, 29 (Tex.Civ. App.—Waco 1970, writ ref'd n.r.e.); *Chapman v. Chapman,* 172 S.W.2d 127, 128 (Tex. Civ.App.—Fort Worth 1943, writ dism'd).

■ In overturning the trial court's judgment in the award of attorney's fees in a divorce case it must appear that there has been a clear abuse of discretion. *See Lewis v. Lewis,* 218 S.W.2d 220, 221–222 (Tex.Civ. App.—Fort Worth 1949, no writ). Appel-

lant contends that appellee's first counsel, Mr. Casseb, is not entitled to attorney's fees because he had withdrawn as attorney of record and did not appear at trial. We find that Judge Casseb performed preparatory work as an attorney in this case. He is entitled to compensation for the legal work performed. He appeared in court to testify as to the reasonableness of his fees and appellant stipulated that the reasonable value of his legal services was $5000. The fact that Judge Casseb withdrew as attorney of record did not remove him from the lawsuit in regard to attorney fees earned to the time of his withdrawal. To hold otherwise would require a separate law suit to pursue his cause of action for attorney fees.

■ As to the $46,000 awarded to Mr. Maloney and Mr. Pasqual and Associates, we also find that there is evidence to support the recovery. Appellee called Mr. Oliver Heard, a board certified specialist in the family law area, to testify as to the appropriate award of fees in this case. Mr. Heard's testimony, upon which the trial judge apparently based the specific dollar amounts awarded to appellee's attorneys, was not controverted by appellant at trial. Appellant contests appellee's good faith in bringing this action, her financial need, and the necessity of retention of counsel. We find that the record supports these elements which are necessary for the recovery of attorney's fees. We note that this was a complicated and protracted law suit. Moreover, the disparate earning capacity of appellant and appellee is apparent from the record. Appellant was the sole income earner in his family, while appellee had been employed for a short time during the first year of their approximately 30 years of marriage. We reject appellant's first two points of error.

■ Appellant complains in point of error number three that the court erred in declaring the two trusts to be null and void because: (1) there was no evidence or pleadings to support the action of the court; (2) that the two children of the marriage of appellant and appellee, who were contingent beneficiaries of the trust, were not

made parties to the suit; and (3) that the court lacked jurisdiction pursuant to Family Code 3.63 to declare said trust null and void.

We again note that the first time the appellant raises the insufficiency of the pleading was in an instrument appellant styled "Motion for New Trial and to Modify, Correct or Reform the Judgment." Appellee's pleadings called for a division of the community property. Evidence was introduced that the corpus of each trust were community property. No objection was made during trial to the introduction of evidence concerning these trusts. *See Lampsman v. First National Bank in Dallas, supra.*

As to appellant's contention that the residence situated at 300 Mandalay Drive East, San Antonio, Texas, was in trust and not properly before the court, we note that in the original inventory appellant described the property and then stated, subject to trust indenture dated December 23, 1976, executed by Elwood Cluck, settlor, and Margaret Cluck, trustee. In his amended inventory he lists as community property the property situated at 300 Mandalay Drive East, in San Antonio, Texas, again describing the property but deleting any reference to a trust. There was no 300 Mandalay trust indenture introduced into evidence. There being no evidence before the trial court as to a "300 Mandalay Drive East Trust" the trial court properly treated it as community property.

There was introduced into evidence a trust instrument styled 412/52 Ranch Trust wherein appellant, as settlor, transferred to Margaret Cluck, trustee and as primary beneficiary, lands situated in Burnet County, Texas. The contingent or secondary beneficiaries are the children of the parties. The real estate owned by the trust was sold and part of the consideration was a note executed by the purchasers payable to Margaret Cluck individually and as trustee. Appellant contends that the income (interest) earned was community property while the principal belonged to the trust. Assuming appellant's position as to the ownership in the note is correct, the trial court, in its discretion, had authority to award appellant's interest in the note to appellee, and he has no standing to complain as to the children's interest in the note. The children of the parties, both over eighteen years of age, are not bound by the judgment and have standing to contest the ownership of the note. *Cooper v. Texas Gulf Industries, Inc.,* 513 S.W.2d 200 (Tex.1974).

Appellant, by his fourth point of error, challenges the authority of the trial court in awarding a membership in the San Antonio Country Club to appellee. The San Antonio Country Club is a voluntary association organized as a non-profit corporation. Membership in the club is by invitation of the Board of Governors and the Board has the authority to terminate membership. The by-laws of the club provide, in part:

> Upon the death of any stockholding member of the club, or upon the resignation or dismissal of any member of upon such member being dropped for any cause from membership of the club, or upon acceptance by the Board of an application for a senior membership, or upon acceptance to become an associate member, or upon transfer to a non-resident member, the Board of Governors shall have the prior right to purchase for the corporation, the share or shares of stock held by such member for $1,000.00, provided, however, the widow or widower or adult son or daughter of a deceased member may have the deceased member's share transferred to their name without payment of initiation fee, upon being invited to stockholding membership by the Board of Governors. Upon the certificate evidencing such share of stock issued or transferred, there shall be endorsed the following:
>> The stock is nonnegotiable and nontransferable except on the books of the club, and only after the club has been afforded an opportunity to exercise its option to purchase the same for $1,000.00 per share.

Appellant, upon paying his initiation fee, was granted membership in the club in his name only.

The divorce decree provided: petitioner, "Margaret Cluck, is awarded the following property as her sole and separate property and estate, and respondent, Elwood Cluck, is hereby divested of all right, title and interest in and to such property, to-wit:"

\*   \*   \*   \*   \*   \*

M.   All right, title, interest, equity and ownership in and to the San Antonio Country Club, San Antonio, Texas, currently standing in the name of Elwood Cluck; Elwood Cluck is hereby divested of any membership or ownership rights in said stock and such membership and ownership rights are hereby transferred to Margaret Cluck, and all rights and privileges in connection with said stock heretofore standing in Elwood Cluck shall be and are hereby assigned and transferred to Margaret Cluck.

Since the membership stock has a contingent redeemable value of $1,000.00, the trial court could and did take into consideration this as an asset of the community in dividing the community estate of the parties. However, we are of the opinion that the trial court had no authority to divest the appellee of membership in the club. We view the stock certificate as merely an indicia of the right to membership analogous to a membership card in any voluntary association, and personal only to the appellant. Courts have been reluctant to interfere with the internal management of a voluntary association. In *Brotherhood of Railroad Trainmen v. Price,* 108 S.W.2d 239, (Tex.Civ.App.—Galveston 1937, writ dism'd) the court states,

> Courts are not disposed to interfere with internal management of a voluntary association . . . . . . . A member, by becoming such, subjects himself, within legal limits, to his organization's power to administer, as well as to its power to make, its rules. To say that the courts may exercise the power of interpretation and administration reserved to the governing bodies of such organizations would plainly subvert their contractual right to exercise such power of interpretation and administration. So long as such governing bodies do not substitute legislation for interpretation, do not transgress the bounds of reason, common sense, fairness, do not contravene public policy, or the laws of the land in such interpretation and administration, the courts cannot interfere.

*Id.* at 241.

The San Antonio Country Club, as a voluntary association, has the sole right to determine who will be members of their club. We note that, according to its by-laws, that even a spouse of a decedent member stockholder needs the approval of the Board of Governors prior to becoming a stockholder member of the club. Our Supreme Court has stated:

> A voluntary association has the power to enact rules governing the admission of members and prescribing certain qualifications for membership; and such rules will be enforced, unless they are against good morals or violate the laws of the state.

*Cline v. Insurance Exchange of Houston,* 140 Tex. 175, 166 S.W.2d 677 (1942).

■ We therefore hold that the trial court erred in divesting the appellant of his membership in the country club.

■ Appellant makes his general allegation that the division of the marital estate was disproportionate and not fair, just and equitable in his fifth point of error. To overturn a trial court's division of a marital estate in a divorce appellant must establish a clear abuse of discretion. *See Lewis v. Lewis, supra.* The division of a marital estate in a divorce may be based upon a variety of factors including the fault for the breakup of the marriage, the age of the parties, the respective earning capacities of the parties, and length of the marriage. *See Murff v. Murff,* 615 S.W.2d 696, 698–99 (Tex.1981).

Appellant contends that the trial court has in effect made a division of the marital estate under which the appellee has received eighty-six percent of the estate while

appellant has received only fourteen percent. We are wary of placing a percentage figure upon the division of the property in this case. Disparate divisions of the community have been upheld where the facts so warrant. *Huls v. Huls,* 616 S.W.2d 312, 317–318 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Cooper v. Cooper,* 513 S.W.2d 229, 231–232 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). Bearing these facts in mind, we will proceed to review the evidence produced at trial. It is certainly true that appellee has received the bulk of the marital estate including the family home, the income from various promissory notes, several properties, and a cash judgment. Nonetheless, appellant received in total his professional practice. Indeed, the one case appellee cites for the proposition that the alleged percentage division of the estate was improper, the case of *Hooper v. Hooper,* 403 S.W.2d 215 (Tex.Civ.App.—Amarillo 1966, writ dism'd), turned in part upon the decision of the trial court to award appellee the income earning property of the marital estate. *Id.* at 217. In the case at bar appellant has his law practice. The record reflects that appellant, an attorney, is a highly successful tax and probate specialist. Appellant's net income reported on his personal income tax returns for the years 1975 to 1979 ranged from $31,390.70 in 1978 to a high of $79,639.95 in 1979. The unchallenged testimony of appellee's accountant established that appellant would have net earnings of something on the order of $80,000 in the tax year 1980. Appellant's partnership tax returns for the years 1976 to 1979 disclose similar earnings. These facts are significant because appellant's ascertion of a disproportionate division of the marital estate is based almost entirely upon his valuation of his law practice at a dollar figure based upon the practice's net assets. These assets are essentially the office furniture and minor cash deposits in bank accounts. Appellee, as noted earlier, has not been employed during almost the entirety of her married life, and by appellant's own admission does not have very promising employment prospects.

The appellant in this case has, moreover, stipulated to his fault in the cause of this divorce. While he argues quite correctly that fault is rarely a one-way street in the cause of a divorce, nonetheless it is a fact that the trial judge could reasonably take into account in making the division of the marital estate. *See Murff, supra.*

On balance, we cannot say the trial court abused its discretion in the division of the marital estate. The court has legitimately attempted to provide some financial security for Mrs. Cluck in the future while allowing appellant to pursue his livelihood. We overrule appellant's fifth ground of error.

Appellant's sixth and seventh grounds of error concern the failure of the trial judge to credit certain sums to appellant in making the property division. The sixth point of error concerns expenditures by the appellant for temporary alimony *pendente lite* and for house payments, *ad valorem* taxes, and insurance premiums paid on the house at 312 Mandalay Drive. The seventh point of error seeks credit for sums expended by appellee from bank accounts and payments on notes. We note as before, that the test in reviewing on appeal the property division arrived at by the trial judge in a divorce case is one of abuse of discretion. *See Lewis v. Lewis, supra.* We believe, bearing in mind the financial position of the parties, the trial court's decision to tax appellant with the costs of maintaining the residence at Mandalay Drive, including the necessary *ad valorem* taxes and insurance premiums was not an abuse of discretion. The court was also within its discretion to refuse to credit alimony *pendente lite* already expended by the appellant when making the property division. *See Berg v. Berg,* 232 S.W.2d 785, 786 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.).

The appellant's contention concerning expenditures by appellee of funds deposited in the bank accounts and of payments made from notes amounting to more

**344**

than $16,000 is also without merit. It is uncontested that appellant appropriated $60,000 from bank stock which was owned by the community. Appellee argued vigorously that these appropriations of funds from bank notes by the appellant were in contradiction of temporary orders. We cannot find that the trial judge's failure to credit expenditures by appellee was an abuse of discretion, taking into account the conduct of appellant in expending community funds. The trial judge's action is sustained.

We hold that the trial court did not abuse its discretion in the division of the community property, including the community property interest in the stock of the San Antonio Country Club. But we further hold that, as a matter of law, the trial court erred in divesting appellant of his membership in the club. Therefore in conformity with *Fuhrman v. Fuhrman,* 302 S.W.2d 205, 212 (Tex.Civ.App.—El Paso 1957, writ dism'd), we remand the case, with instructions to the trial court to reform its judgment as to its transferring any right, title or ownership in appellee's membership to the San Antonio Country Club.

### ON APPELLANT'S AND APPELLEE'S MOTIONS FOR REHEARING

Appellant and appellee have each filed motions for rehearing. We find that, except as to appellee's motion to reconsider assessment of court costs, that their motions are without merit. We agree that there has been an improper apportionment of the Court costs.

It is, therefore, ordered that the judgment in this cause be amended, and that appellant, Elwood Cluck and surety, Aetna Casualty and Surety Company, pay two-thirds of the costs of the appeal and the appellee, Margaret Cluck, pay one-third of the costs of the appeal.

It is further ordered that appellant's motion for rehearing and the appellee's motion for rehearing, with the exception of the court costs, are overruled, and that the judgment of the court heretofore entered be affirmed as amended.