NUMBER 13-08-310-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

KHALEDA P. BHATTI, Appellant,

 

v. 


MUHAMMAD I. BHATTI, Appellee.

 


On appeal from the 93rd District Court 

of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Vela


 Appellant, Khaleda P. Bhatti ("Khaleda"), appeals a trial court judgment granting a
divorce from appellee, Muhammad Bhatti ("Muhammed"). By one issue, Khaleda
complains that the trial court erred in entering judgment based upon the findings of an
appointed master because the master did not afford her an opportunity to be heard at a
meaningful time and in a meaningful manner, thereby violating her right to due process of
law. We affirm.

I. Background

 Muhammed filed an original petition for divorce on May 16, 2006, stating discord or
conflict of personalities as grounds for the divorce. Khaleda countersued on June 8, 2006. 
The parties' two children were both under the age of eighteen at the time of the divorce. 
 Before granting the divorce, the trial court held a number of contested hearings. 
The first, on December 13, 2006, concerned modification of temporary orders for visitation
during the Christmas holidays. At that hearing, Muhammed complained that he had never
been able to have possession of the children on his scheduled weekends. Ultimately, the
parties agreed to alter the Christmas visitation. 

 On May 22, 2007, the trial court held a final hearing on the divorce. At that hearing,
the attorneys announced that the parties had come to a resolution. They agreed that the
home and furnishings would be awarded to Khaleda as her separate property. She was
also to receive her retirement account and some cash. Muhammed would receive his
retirement account. The couple agreed that the children's education accounts would be
held in the children's names. Each party was awarded an automobile. The parties also
agreed on the matter of child support. 

 The primary controversy at the final hearing involved possession and access to the
children. The oldest, sixteen years old at the time, was a student at the University of
Texas. The younger child was fourteen years old. Muhammed sought standard visitation,
but agreed to give his older son seven days notice because of the child's educational
concerns. Later, however, Muhammed reneged somewhat, stating that he could not
always give the seven-day notice because his employer sometimes sent him to Austin on
short notice. Presumably, he wanted to visit his son while in Austin. Khaleda told the court
that Muhammed had brought the police to the house twice because the children did not
want to go with him. The older son testified that he feared his father because of "many
past incidents." The trial court stated at the end of the hearing that it was going to order
joint managing conservatorship of the children and ordered the parties to prepare a decree
that reflected the agreements. 

 In June 2007, Khaleda filed a motion to set aside the earlier agreement. At a July
3, 2007, hearing on her motion, Khaleda testified that she had taken $30,000 out of the
parties' checking account to pay for their oldest son's education. According to Khaleda, 
Muhammed had taken $35,000 of their savings and, later, an additional $50,000 before
the oldest child started college. He admitted that he had taken $17,500 and sent it to
family members in Pakistan. At the hearing, Khaleda testified that she believed
Muhammed made additional misrepresentations with respect to the money. Both children
stated that they wanted visitation to be on their terms. At the end of the hearing, the court
stated that the standard visitation order would be in effect. The trial court also advised the
parties that it might appoint a special master. 

 At some point, the trial court appointed David Calvillo to be the special master. No
written order appears in the record showing when the appointment occurred. No objections
were made, however, with respect to the appointment. Both parties submitted to the court
statements of how they believed the assets should be divided, attaching supporting proof. 
On November 23, 2007, the master made his recommendations to the trial court, which, in
most respects, mirrored the parties' earlier agreement. Khaleda objected to the
recommendations, stating that the master had exceeded the authority given him by the trial
court by making recommendations regarding custody and visitation. She also urged that
the master failed to examine evidence concerning the concealment of cash by Muhammed
as well as a complaint that the special master did not conduct any evidentiary hearings. 
Muhammed responded, arguing that the trial court had, indeed, given the special master
authority to decide all disputes. Muhammed claimed that before initiating his report, the
special master met with counsel for both parties to discuss their respective claims and both
parties submitted documents for his review.

 On January 16, 2008, the trial court held a hearing on the objections to the master's
report. At that hearing, the trial court heard argument, but no evidence was offered by
either party. With regard to the visitation issue, Khaleda's counsel stated: "And we'll go
with what the Court says, but we just wanted to bring light to the Court about the different
omissions here in this report." At the hearing, the trial court indicated that it would review
what the master had done. At no time, did the court refuse to review additional evidence. 
The trial court overruled Khaleda's objections to the report on February 6, 2008, and signed
the final decree of divorce on February 14, 2008.

 The trial court, thereafter, heard Khaleda's motion for new trial. At the hearing, the
trial court explained to her that the master had not decided the visitation issue; rather, the
trial court had. No evidence was offered at this hearing. At the end of the hearing, the trial
court denied Khaleda's motion for new trial. This appeal ensued.

II. Applicable Law and Standard of Review

 The trial court appointed a master in this case. Because the record does not state
the authority for the appointment of the master, we will assume that the appointment was
made pursuant to rule 171 of the Texas Rules of Civil Procedure, which provides, in part:

 The court may, in exceptional cases, for good cause appoint a master
in chancery, who shall be a citizen of this State, and not an attorney for either
party to the action, nor related to either party, who shall perform all of the
duties required of him by the court, and shall be under orders of the court,
and have such power as the master of chancery has in a court of equity.


 . . . .


 He may require the production before him of evidence upon all matters
embraced in the reference, including the production of books, papers,
vouchers, documents and other writings applicable thereto. He may rule upon
the admissibility of evidence, unless otherwise directed by the order of
reference and has the authority to put witnesses on oath, and may, himself,
examine them, and may call the parties to the action and examine them upon
oath. When a party so requests, the master shall make a record of the
evidence offered and excluded in the same manner as provided for a court
sitting in the trial of a case.


. . . .


 The court may confirm, modify, correct, reject, reverse or recommit the
report, after it is filed, as the court may deem proper and necessary in the
particular circumstances of the case. The court shall award reasonable
compensation to such master to be taxed as costs of suit.


Tex. R. Civ. P. 171.

 

 The appointment of a master in chancery is done in exceptional circumstances when
there is good cause. Bell v. Bell, 540 S.W.2d 432, 438 (Tex. Civ. App.-Houston [1st Dist.]
1976, no writ). No objection was made in this case to the appointment of the master. Case
law construing the rule provides that the filing of special exceptions to the master's report
allows the objecting party to obtain a trial de novo. Young v. Young, 854 S.W.2d 698, 701
(Tex. App.-Dallas 1993, writ denied). When objections are made to the master's report,
each party has the right to present evidence on the issues specified in the objections and
have the court decide these issues. Id. In our review, we review the trial court's judgment,
not the master's findings. See Martin v. Martin, 797 S.W.2d 347, 350 (Tex.
App.-Texarkana 1990, no writ). A trial court's division of property in a divorce case should
be corrected only when the trial court abuses its discretion by a division that is manifestly
unjust and unfair. McKnight v. McKnight, 543 S.W.2d 863, 868 (Tex. 1976).

III. Analysis

 Here, Khaleda properly objected to the master's findings. After the trial court
rendered judgment, Khaleda also timely filed a motion for new trial. We have reviewed the
record and can find no specific request prior to the judgment being entered for the trial court
to conduct a trial de novo. Rather, Khaleda's complaint is that the master did not conduct
hearings or provide her due process at that stage of the proceeding. Regardless, no one
attempted to introduce additional evidence. On the record before us, we cannot
conclude-one way or the other-whether the master heard evidence, whether Khaleda
asked him to hear evidence or, whether he refused to hear evidence that she attempted or
requested to present. (1) The record only reflects that both parties presented documents to
the master for his review. This Court has no way of knowing if these documents were
evidentiary in nature. Based on the record before us, we cannot conclude that there was
error in the master's report. 

 Prior to appointing the master, the trial court heard evidence with regard to
possession of the children and the agreed distribution of property. The court stated on the
record that it was he, not the master, who had made the decision with respect to custody
and possession issues. The court also stated at the hearing on Khaleda's objections to the
master's report that the court owed the Bhattis the opportunity to "hear [their] arguments
and then review it again with that background still fresh in [his] mind." Neither party actually
asked for a de novo hearing or trial before the trial court entered its judgment. The trial
court indicated that it would independently review the information that had been presented
to the master. While it was clear that the trial court thought that the master had done a
good job, there is nothing in the record to suggest that Khaleda was denied the right to
present evidence to the trial court or that she was denied due process at any stage of the
proceedings. 

 Moreover, the court's property disposition was basically in accord with the parties'
earlier agreement. The trial court heard testimony and argument at an earlier hearing and
was aware that Khaleda believed that Muhammed had secreted some assets to Pakistan
as early as 1996 and had misrepresented the value of his retirement account by $20,000. 
Again, this Court has no way of knowing exactly what either the master or the trial court
reviewed. 

 We recognize the case law is clear that one is entitled to a de novo hearing on the
master's recommendation if there are proper objections to the master's report. See Young,
854 S.W.2d at 171. However, the record does not reflect that a trial de novo was ever
specifically requested or refused before the court reviewed the master's report and entered
judgment. We also are unable to determine what, exactly, the trial court reviewed in
response to Khaleda's objections. It appears that the trial court, in fact, reassessed what
the master had done independently and determined that the master's determination was
proper. Having determined that the record before us does not show that error, if any, has
been preserved, we cannot conclude the trial court abused its discretion. Tex. R. App. P.
33.1. We overrule Khaleda's issue. 

IV. Conclusion

 The judgment of the trial court is affirmed. 



 

 ROSE VELA

 Justice



Memorandum Opinion delivered and 

filed this 20th day of August, 2009.








 
1. Counsel for Khaleda stated that during the hearing on her objections the master had not conducted
hearings with regard to Muhammed's alleged misrepresentation of the value of assets, but nothing appears
of record showing that any hearing had either been requested or denied. There was a discussion on the
record that the master had met with the attorneys and had asked them for documentation with regard to their
individual positions.